**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HERMANIO LLEVAT,<br><br>                              Plaintiff,<br><br>    v.<br><br>TRUE NORTH BRANDS, LLC, *et al.*,<br><br>                              Defendants. | Case No. 21-cv-656-BAS-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL ARBITRATION (ECF No. 6);**<br><br>**(2) GRANTING MOTION TO TRANSFER VENUE (ECF No. 2); AND**<br><br>**(3) DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST TO STAY OR, IN THE ALTERNATIVE, DISMISS ACTION (ECF No. 6)** |

Before this Court are (1) Plaintiff Hermanio Llevat's motion to compel arbitration and stay, or in the alternative, dismiss this proceeding ("Motion to Compel") (Mot. to Compel ("Pl.'s Mot."), ECF No. 6) and (2) Defendants True North Brands, LLC and Thibiant Beverly Hills, LLC's motion to transfer venue ("Motion to Transfer") (Mot. to Transfer ("Defs.' Mot."), ECF No. 2). The parties have fully briefed both Motions. (*See* ECF Nos. 5, 7, 15–16.) The Court finds the Motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Compel and **GRANTS** the Motion to Transfer. The strand of the Motion to Compel seeking a stay or dismissal of this proceeding until resolution of the arbitral claims is **DENIED** without prejudice to renewal before the transferee court.

## I.   BACKGROUND

This action is borne from the demise of the business relationship between Defendant True North Brands, LLC ("TNB") and its member and former manager, Plaintiff Hermanio Llevat, which already is the subject of a first-filed, breach of fiduciary lawsuit in Nevada state court. (*See* Reply in Supp. of Defs.' Mot. ("Defs.' Reply") ¶ 3, ECF No. 7; *see also* Pl.'s Mot. 3–4.) Notably, that suit was compelled to arbitration pursuant to TNB's Second Amended and Restated Operating Agreement ("Agreement"). (Declaration of Eugene J. Geekie, Jr., Esq., ("Geekie Decl.") ¶ 1, Ex. 1 to Defs.' Mot., ECF No. 2; Agreement, Ex. 1 to Declaration of Hermanio Llevat ("Llevat Decl."), ECF No. 6-2.) Although the Agreement provides San Diego as the forum for arbitration, the parties agreed to arbitrate the underlying dispute in the first-filed action in Los Angeles County. (*See* Defs.' Reply ¶¶ 2–3.)

Plaintiff initiated this action on March 11, 2021, when he filed suit against TNB and its subsidiary, Defendant Thibiant Beverly Hills, LLC ("Thibiant"), in San Diego Superior Court. (Compl., Ex. 1 to Notice of Removal, ECF No. 1-2.) TNB is a Nevada limited liability company formed in May of 2008 that does business throughout the United States.

(*Id.* ¶ 2.) According to the Agreement, Plaintiff is both the controlling member of TNB and was formerly one of TNB's two managers. (*Id.* § 1.)[1]

The Complaint proffers factual allegations that form the bases of two categories of claims against Defendants. The first bucket of claims relates to Plaintiff's allegations that he provided TNB and Thibiant with "multiple loans, deferred income, [and] direct payments" that Defendants were required but failed to repay. (Compl. ¶ 7.) Specifically, Plaintiff asserts that:

- Thibiant defaulted on a $350,000 promissory note into which it entered with Plaintiff on June 1, 2008 ("2008 Note") (*id.* ¶¶ 23–32);

- TNB defaulted on a $100,000 promissory note into which it entered with Plaintiff on October 29, 2016 ("2016 Note") (*id.* ¶¶ 33–43);

- Thibiant failed to reimburse Plaintiff for paying down the outstanding portion of a $2,500,000 loan Thibiant had borrowed from First Republic Bank on June 5, 2008 ("2008 Loan") (*id.* ¶¶ 44–55); and

- Thibiant failed to reimburse Plaintiff for paying down $111,738.82 Thibiant had incurred on its American Express and Chase Visa credit cards, collectively ("Credit Card Debt") (*id.* ¶¶ 56–64).

By this action, Plaintiff seeks damages in the amount Defendants purportedly are indebted to him.[2] To this end, Plaintiff asserts five causes of action: breach of the 2008 Note (Count III) (*id.* ¶¶ 23–32); breach of the 2016 Note (Count IV) (*id.* ¶¶ 33–43); indemnification for the 2008 Loan (Count V) (*id.* ¶¶ 44–55); and unjust enrichment relating to Plaintiff's payment of Thibiant's Credit Card Debt (Counts VI (American Express) & VII (Chase Visa)) (*id.* ¶¶ 56–64).

The second bucket of claims in the Complaint relates to TNB's allegedly unlawful procurement of Plaintiff's private electronic communications from a domain entitled

---

[1] Defendants aver that TNB removed Plaintiff from his management role in approximately 2018. (Defs.' Reply n.1.)

[2] While Thibiant is not a party to the Agreement, Plaintiff alleges that TNB "is responsible for all debts and liabilities of Thibiant" as owner of "a majority controlling interest in Thibiant." (Compl. ¶ 3.)

"truenorthinv.com," of which Plaintiff claims sole ownership. Specifically, Plaintiff avers that in approximately 2019, TNB falsely represented itself as truenorthinv.com's "true owner" to the hosting service on which that domain operates and, "through threats and cajoling," secured "dominion over the . . . domain," along with access to Plaintiff's email account. (*Id.* ¶¶ 9–15.) Consequently, Plaintiff alleges that TNB has "intercepted communications that belong to [Plaintiff]," that "were in many instances private" and, in some instances, attorney-client privileged. (*Id.* ¶ 8.) In so doing, Plaintiff claims TNB violated both the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 1511 *et seq.*, (*id.* ¶¶ 9–15) (Count I) and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.* (*id.* ¶¶ 16–22) (Count II).

Defendants removed this action to federal court on April 14, 2021. (Notice of Removal, ECF No. 1.) Since then, Plaintiff and Defendants have filed competing Motions to compel arbitration and transfer venue to the Central District of California, respectively. Plaintiff brings his Motion to Compel pursuant to Section 16 of the Agreement ("Arbitration Provision"), which provides:

> 16. **Arbitration.** In the event of any dispute arising hereunder, the parties hereto agree to resolve such dispute through arbitration in San Diego, California conducted in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA"). The decision of the arbitrator shall be final, binding and conclusive, may be filed in any court of competent jurisdiction and there shall be no right of appeal or otherwise to seek an alternative adjudication of such matter.

(Agreement § 16.) Defendants oppose the Motion to Compel only to the extent Plaintiff seeks to arbitrate Counts I and II, arguing, in essence, that those claims do not "arise under" any provision of the Agreement. (Defs.' Opp'n to Mot. to Compel ("Defs.' Opp'n"), ECF No. 15.) Conversely, Plaintiff avers that Counts I and II relate to "management" of TNB and, thus, arise under the Agreement's Section 1, Management by Managers. (Reply in Supp. of Pl.'s Mot. to Compel ("Pl.'s Reply") 2, ECF No. 16.) Plaintiff further argues arbitration should be compelled in the interest of efficiency, for splitting this action into

arbitrable and inarbitrable claims risks "piecemeal litigation." (*Id.* 3.) It also is that basis upon which Plaintiff seeks to stay or, in the alternative, dismiss this action pending resolution of all arbitral claims. (Pl.'s Mot. 7.)

Defendants bring their Motion to Transfer principally in the interest of convenience to the parties and witnesses and in light of the nexus between the events underlying the Complaint and the proposed venue. (*See* Defs.' Mot.) Specifically, they argue transfer to the Central District of California is warranted because: (1) "all events that form the basis of the Complaint occurred . . . in Los Angeles County"; (2) "Plaintiff resides in Los Angeles County"; (3) TNB's "headquarters during the time of the alleged events was in Los Angeles County"; and (4) upon information and belief, "most of the witnesses to the events which form the basis of the Complaint reside within [Los Angeles County]."[3] Plaintiff does not dispute these facts. Instead, citing the portion of the Arbitration Provision that states the parties "agree to arbitration in San Diego, California" ("Forum Selection Clause"), he argues the Southern District of California is the proper venue for this matter. (Pl.'s Opp'n to Mot. to Transfer ("Pl.'s Opp'n") 2, ECF No. 5; Agreement § 16.) Defendants respond that the parties' selection of the forum in which to arbitrate the dispute "bear[s] no relationship to the proper venue" in which to litigate a federal case, and that Plaintiff waived the Forum Selection Clause when he agreed to arbitrate the first-filed action in Los Angeles County. (Defs.' Reply ¶¶ 2–3.)

## II. LEGAL STANDARD

### A. Arbitration

The Federal Arbitration Act ("FAA") applies to contracts involving interstate commerce. 9 U.S.C. §§ 1, 2. If a party is bound to an arbitration agreement that falls within the scope of the FAA, the party may move to compel arbitration in a federal court. *Id.* §§ 3–4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012

---

[3] Los Angeles County is "located within the jurisdiction and venue of the Western Division of the United States District Court for the Central District of California." *Devon v. California*, No. 1:21-CV-01259-HBK, 2021 WL 3722775, at *1 (E.D. Cal. Aug. 23, 2021).

(9th Cir. 2004). "Generally, the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (citation omitted).

Given this strong federal preference for arbitration and the contractual nature of arbitration agreements, "a district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable agreement to arbitrate. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1010 (S.D. Cal. 2017) (quotations omitted). Instead, a district court's determinations are limited to (1) whether a valid arbitration exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If a party seeking arbitration establishes these two factors, the court must compel arbitration." *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

**B.     Venue**

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action for the convenience of parties and witnesses, and in the interest of justice, to any judicial district where the action might have been brought. 28 U.S.C. § 1404(a). The United States Supreme Court in *Van Dusen v. Barrack*, 376 U.S. 612 (1964) explained that the purpose of Section 1404(a) is to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Id.* at 616. A motion to transfer lies within the broad discretion of the district court and is

determined on an individual basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

## III. ANALYSIS

### A. Motion to Compel

As an initial matter, this Court is the proper venue for Plaintiff's Motion to Compel. Because a district court can only compel arbitration in its own district, *see Kim v. Colorall Techs., Inc.*, C-00-1959-VRW, 2000 WL 1262667, at *1 (N.D. Cal. Aug. 18, 2000) (citing 9 U.S.C. § 4), a clause specifying the location for arbitration also indicates which federal district is the proper forum for litigating any issues related to the arbitration. *See Allied Prof'l Ins. Co. v. Anglesey*, No. CV 14-00665 CBM, 2018 WL 6219926, at *7 (C.D. Cal. Aug. 10, 2018) (construing a forum selection clause specifying only that arbitration shall occur in California as consent to personal jurisdiction in California courts "for the limited purpose of compelling arbitration"), *aff'd and remanded*, 952 F.3d 1131 (9th Cir. 2020); *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1092 (D. Haw. 2011) (finding that parties' selection of Dallas, Texas as the forum for arbitration "strongly suggest[ed]" that the Northern District of Texas was the proper venue to adjudicate a motion to compel arbitration). Thus, the parties' agreed-upon arbitration forum of San Diego similarly indicates consent to this Court as the proper forum for adjudicating the Motion to Compel Arbitration.

Although Defendants do not argue expressly that it would be improper for Plaintiff's Motion to Compel to be heard in this district, this Court finds it possible to construe from Defendants' papers that they imply the Forum Selection Clause should be invalidated in its entirety under the doctrine of waiver in light of the pending arbitration in Los Angeles. Plaintiff's agreement to arbitrate another dispute with TNB in Los Angeles does not constitute waiver. The Agreement includes a waiver provision that states:

> (g) <u>Waivers</u>. No waiver of any provision of this Agreement shall be binding unless executed in writing by the waiving party. The failure of any party hereto to insist upon strict performance of any provision of this

> Agreement by any other party . . . shall not be a waiver for such party's right to demand strict compliance in the future. No waiver of any provision of this Agreement . . . be applicable to subsequent transactions unless otherwise stated therein.

(Agreement § 15(g).) Thus, the contract itself evinces that even if Plaintiff's decision to arbitrate in Los Angeles in the first-filed action constituted waiver of the Forum Selection Clause, it has no effect on forum selection in this instant, subsequent action. *See GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co.*, No. CV 10-765 DSF (JCX), 2010 WL 11598018, at *3 (C.D. Cal. May 3, 2010) (finding no waiver where, in part, "the Agreement's waiver provision makes clear that failure to strictly comply with the Agreement's provisions in the past does not constitute waiver of any rights provided by the Agreement to the parties"). Thus, the Court finds no exceptional circumstances to divest the Forum Selection Clause of its controlling weight. However, this is not to say that the Southern District of California is the proper venue for trial of claims this Court finds inarbitrable, as addressed in more fulsome detail below.

Turning next to the Motion to Compel, there is no dispute that the Agreement and, moreover, the Arbitration Provision, is valid. Indeed, as mentioned above, the parties presently are engaged in an arbitration proceeding compelled from Nevada state court under precisely the same Arbitration Provision. (*See, e.g.*, Geekie Decl. ¶ 1.) Moreover, Defendants consent to the arbitration of Counts III through VII of the Complaint relating to the "multiple loans, deferred income, [and] direct payments" that Plaintiff purportedly provided Defendants, for which Plaintiff now seeks reimbursement. (Defs.' Opp'n 4.)[4]

---

[4] Nor is it disputed that this Court shall decide issues of arbitrability. *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitration.").

Thus, the lone dispute respecting Plaintiff's Motion to Compel is whether the term "any dispute arising hereunder," as used in the Arbitration Provision, encompasses Counts I and II. (*See* Agreement § 16.) "Generally, in determining whether a given claim is subject to arbitration, a court must engage in a two-part inquiry, first determining the breadth of the arbitration clause (whether it is broad or narrow), and then applying the relevant scope of the provision to the asserted legal claims to determine if they require arbitration." *ValueSelling Assocs., LLC v. Temple*, No. 09-CV-1493-JM, 2009 WL 3736264, at *2 (S.D. Cal. Nov. 5, 2009) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720–26 (9th Cir. 1999)); *accord Chelsea Fam. Pharm., PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009) ("In construing the scope of an agreement, we 'classify the particular clause as either broad or narrow.'" (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001))). This approach "furthers freedom of contract so that parties are not 'required to submit to any dispute which [they have] not agreed so to submit.'" *Chelsea Fam. Pharm., PLLC*, 567 F.3d at 1196 (quoting *AT&T Techs., Inc.*, 475 U.S. at 648).

The Ninth Circuit held in *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983), and confirmed on numerous occasions thereafter, that arbitration agreements that deploy only the phrase "arising hereunder," or a similarly constructed term, to cast the scope of arbitrable claims are narrow in nature. *See id.* (equating the phrase "arising hereunder" to "arising under," and holding those terms are "relatively narrow as arbitration clauses go" (quoting *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 364 (S.D.N.Y. 1966))); *Tracer Res. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("The 'arising out of' language is of the same limited scope as the 'arising under' language in *Mediterranean Enterprises*." (citing *In re Kenoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961))); *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921–22 (9th Cir. 2011) (confirming "the phrase 'arising hereunder' in an arbitration agreement should be interpreted narrowly"); *see also Faegin v. LivingSocial, Inc.*, No. 14-CV-00418-WQH-KSC, 2014 WL 5307186, at *4 (S.D. Cal.

Oct. 15, 2014) (holding that an arbitration agreement's use of just the term "arising out of the agreement" is narrower than an agreement that deploys the term "arising out of or *relating to* the agreement" (emphasis added)).  Plaintiff provides no basis for an alternative, broad interpretation of the Arbitration Provision, nor is one apparent to the Court.[5]

Having construed the Arbitration Provision narrowly, the Court next analyzes whether Counts I and II "arise [u]nder" the Agreement.  *See ValueSelling Assocs.*, 2009 WL 3736264, at *2.  Claims that "arise under," "arise from," or "arise out of" an agreement consist only of those causes of action that "relat[e] to the interpretation and performance of the contract itself."  *Tracer Res. Corp.*, 42 F.3d at 1295; *Mediterranean Enters., Inc.*, 708 F.2d at 1464 ("[W]hen an arbitration clause 'refers to disputes or controversies 'under' or 'arising out of' the contract,' the arbitration is restricted to 'disputes and controversies

---

[5] Although the parties each cite only to cases from within the Ninth Circuit, the Court observes that the Agreement expressly provides its terms shall be "governed by and construed and enforced in accordance with, the internal laws of the State of Delaware." (Agreement § 15(h).)  Nonetheless, courts routinely apply federal law in determining both the validity and applicability of agreements to arbitrate in contracts that, like the Agreement here, affect commerce and, thus, are subject to the FAA.  *See ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th Cir. 1983) ("Determining what claims fall within the class of disputes governed by an arbitration agreement is a question of federal law."), *as amended* 754 F.2d 1394 (9th Cir.).  Thus, this Court finds that *Mediterranean Enterprises* and its progenies still control the Agreement because they apply federal law in interpreting the scope of the subject arbitration agreements.

Even assuming *arguendo* that the Court must apply Delaware courts' interpretation of the Arbitration Provision's language in determining its breadth, it ultimately matters not that, in contrast to the Ninth Circuit, "Delaware courts have found arbitration provisions using similar 'arising under' language to be broad in scope."  *See, e.g.*, *CAPROC Manager, Inc. v. Policemen's & Firemen's Ret. Sys. of City of Pontiac*, No. Civ. A 1059-N, 2005 WL 937613, at *2 (Del. Ch. Apr. 18, 2005).  Indeed, as explained in more fulsome detail below, even if this Court construed the Arbitration Provision broadly, Counts I and II still would be inarbitrable, for Plaintiff fails to draw even a loose connection between the alleged cyber torts and a single provision of the Agreement.  *See Milton Invs., LLC v. Lockwood Bros., II, LLC*, No. 4909-VCP, 2010 WL 2836404, at *6 (Del. Ch. July 20, 2010) (holding that while courts must "'strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt in favor of arbitration,' . . . they will not manufacture such doubt, nor will they send to arbitration claims that fall outside the scope of an arbitral clause (whether broad or narrow)" (quoting *Parfi Holding v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002), *cert. denied*, 538 U.S. 1032 (2003)); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 655–56 (Del. Ch. 2012) ("A court should not compel a party to arbitrate a cause of action independent of the agreement containing the arbitration provision.  A cause of action is independent of an agreement if it does not touch on contract rights or contract performance.") (internal quotation marks and citation omitted).

relating to the interpretation of the contract and matters of performance.'" (quoting *In re Kinoshita & Co.*, 287 F.2d at 953)); *see also Faegin*, 2014 WL 5307186, at *4.

Simply put, the "arising hereunder" language the parties chose to shape the contours of the Arbitration Provision requires Plaintiff to draw a close connection between a term in the Agreement and the alleged cyber torts that form the bases of Counts I and II. Plaintiff makes no effort to do this. Instead, he conclusively avers that Counts I and II "arise" under Section 1 of the Agreement because they "relate to . . . [the] management and actions of the TNB." (Pl.'s Reply 2.) The Agreement's Section 1 delineates (1) the number of managers TNB shall have at any time; (2) the voting threshold that must be reached to give effect to a decision of TNB's managers; (3) the process for appointing and removing TNB's managers; (4) the duration of a manager's tenure; and (5) methods by which TNB's managers may act on its behalf. (Agreement § 1(a)–(c).)[6] It does not provide, expressly or implicitly, TNB's managers a right to privacy or confidentiality. In fact, it does not confer upon TNB's managers, including Plaintiff, any rights; it is purely procedural in nature.

---

[6] Section 1 of the Second Amended Operating Agreement specifically provides:

**1.   Management by Managers.**

a. The business and affairs of [TNB] shall be managed by up to three (3) managers appointed pursuant to paragraph (b) of this Section (the "Managers"). All decisions of the managers respecting any matter set forth herein or otherwise affecting or arising out of the conduct of the business of [TNB] shall be made by action of the holders of more than fifty (50%) percent of the total Voting Units, as defined in Section 4 hereof ("Controlling Interest").

b. The initial Managers of [TNB] shall be Herminio C. Llevat and Niv Carmi. Each Manager shall hold office until such Manager's respective resignation, removal from office as hereinafter provided, or death. A Manager may resign at any time by written notice thereof to the Managers. A Manager may be removed, with or without cause, by the affirmative vote of Members holding a Controlling Interest.

c. Managers may act by meeting in person, by written consent of the required percentage interest or by telephonic conference call.

The Court is mindful of the clear federal policy favoring arbitration. *See Simula*, 175 F.3d at 719 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). However, it is equally clear that "a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'" *Granite Rock Co. Int'l Broth. of Teamsters*, 561 U.S. 287, 302 (2010). In so deciding whether the parties have agreed to submit a given claim to arbitration, this Court must give effect to the words actually used in the contract. This Court concludes that Counts I and Counts II arise not under any Section of the Agreement, but under the federal statutes—the ECPA and SPA—that bestow Plaintiff the independent privacy rights he alleges Defendants violated and the right to bring Counts I and II in federal court. *See TGG Mgmt. Co. v. Petraglia*, No. 19-CV-2007-BAS-KSC, 2020 WL 2767362, at *6 (S.D. Cal. May 28, 2020) (construing an arbitration clause broadly and finding federal statutory claims for trade misappropriation between an company and its former employee fell outside the arbitration mandate because the claims "ar[o]se from independent statutory provisions which give TGG rights irrespective of the Agreements"); *Faegin*, 2014 WL 5307186, at *4 (construing an arbitration clause broadly and finding trademark infringement and false advertisement claims did not "arise from or relate to" the agreement). Even a broadly drawn Arbitration Provision would not render arbitrable Plaintiff's claims seeking redress for "independent wrongs," which do not "arise under"—let alone touch upon, implicate, or relate to—any provision of the Agreement. *See, e.g.*, *Faegin*, 2014 WL 5307186, at *4; *Feeley*, 62 A.3d at 656.

Notwithstanding that Counts I and II stand apart from the Agreement, Plaintiff argues that this Court should compel those causes of action to arbitration because it is the efficient thing to do. (Pl.'s Mot. 7.) Putting aside Plaintiff's failure to explain what inefficiencies might result from maintaining in different forums separate proceedings that are premised upon entirely distinct factual allegations, the polestar of the federal arbitration analysis is not efficiency but rather the words of a contract and their intended effect. Courts "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency.

The federal arbitration act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement.'" *Tracer Res. Corp.*, 42 F.3d at 1294 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (emphasis in original)).  The appropriate remedy to alleviate possible inefficiencies is through the Court's discretionary power to stay matters pending arbitration, not for the Court to expand the contractual language beyond the parties' manifest intent.

Accordingly, this Court grants the Motion to Compel Counts III through VII of the Complaint to arbitration but denies the Motion to Compel as to Counts I and II, for the Agreement's Arbitration Provision does not encompass those causes of action.

### B. Motion to Transfer

In evaluating a motion to transfer venue and in determining the proper venue for transfer, district courts generally consider eight factors.  *See Hawkins v. Gerber Prods., Inc.*, 924 F. Supp. 2d 1208, 1212–13 (S.D. Cal. 2013).  These eight factors include: "(1) plaintiff choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with an applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum." *Id.* at 1213; *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *see also Jones*, 211 F.3d at 498–99.  On balance, the Court finds that this action might have been brought in the Central District of California pursuant to 28 U.S.C. § 1391, and consideration of the above-referenced factors weigh in favor of transferring this matter to the Central District of California pursuant to 28 U.S.C. § 1404(a).

#### 1. Plaintiff's Choice of Forum/Venue

Plaintiff alleges that he "is now and at all relevant times mentioned in th[e] Complaint" a resident of, and does business in, Los Angeles. (Compl. ¶ 1.)  Deference to a plaintiff's choice of venue is reduced when the plaintiff does not reside in the chosen venue.  *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l. Missionary Soc.*, No. 13-CV-02741, 2014 WL 6907801, at *2 (S.D. Cal. Dec. 8, 2014).

Plaintiff's proffered connection and basis for electing the Southern District of California rests solely upon the Forum Selection Clause in the Agreement. However, the Forum Selection Clause designates San Diego as the location for arbitration only. The Forum Selection Clause in no way manifests the parties' intent to try inarbitrable claims in the Southern District of California. Simply put, the Forum Selection Clause does not control the remaining Counts I and II. Moreover, the Court gives practically no weight to the Forum Selection Clause given Plaintiff's admission that there is a related arbitration between Plaintiff and TNB pending in Los Angeles and that Counts III and VII will be consolidated with that ongoing Los Angeles-based arbitration. (Geekie Decl. ¶ 2; Pl.'s Mot. ("The parties have a pending arbitration . . . and thus, the [p]arties' claims could and should be resolved collectively in the same forum.").)

Furthermore, Defendants aver, and Plaintiff does not dispute, that the events complained of in Plaintiff's Complaint occurred exclusively within the Central District of California. Specifically, the 2008 and 2016 Notes that are the subject of Counts III and IV were negotiated and executed in the Central District of California, Thibiant is located in the Central District of California, and TNB was headquartered in the Central District of California at all times pertinent to the Complaint. Thus, the Court gives little to no weight to Plaintiff's choice of the Southern District of California as the initial venue, particularly given that neither the parties nor witnesses have contacts to this district, there is no nexus between the events alleged in the Complaint and this district, and the Forum Selection Clause is too narrow to supply the missing link to this district. *See Myhre*, 2014 WL 6907801, at *2.

### 2. Convenience of Witnesses

The Court finds that, on balance, transfer to the Central District of California is in the interest of convenience to potential witnesses. Defendants assert that "most of the witnesses to the events which form the basis of the Complaint reside within" the Central District of California. (Defs.' Mot.) Plaintiff does not dispute this. Instead, he argues that

concern about inconvenience is overblown because "the Southern District of California is within driving range and is not unreasonably distant" from Los Angeles. (Pl.'s Opp'n 2.)

In assessing whether the factor of inconvenience to parties and witnesses, on balance, favors transfer, courts in the Ninth Circuit have borrowed from the Fifth Circuit's "100-mile rule." That is, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under [Section] 1404(a) is more than 100 miles, the factor of inconvenience to a witness increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004); *see Askey v. Am. Airlines*, No. 05-CV-2145-DMS-CAB, 2006 WL 8455360, at *3 (C.D. Cal. Mar. 29, 2006); *Vanvakarts v. Fashion Forms, Inc.*, 2020 WL 5044470, at *3 (C.D. Cal. Apr. 29, 2020); *Garza v. Confi-Chek, Inc.*, No. 2:18-CV-01968-KJM-EFB, 2020 WL 243117, at *8 (E.D. Cal. Jan. 16, 2020). Although not expressly adopted by the Ninth Circuit, this Court finds that the 100-mile test is an apt one, as it advances the interests and objectives of the Federal Rules of Civil Procedure. *Garza*, 2020 WL 243117, at *8 ("This rule is consistent with [Fed. R. Civ. P. 45(c)(1)(B), which contemplates a subpoena's potential to impose 'substantial expense' upon the party subject to its power.").

Applying the 100-mile rule, this Court joins at least one other court in this Circuit finding that convenience of witnesses "weighs heavily in favor of transfer" where, as here, witnesses "would be forced to travel over 100 miles from Los Angeles to San Diego to testify at trial." *See Askey*, 2006 WL 8455360, at *3. Accordingly, transfer to the Central District of California would significantly reduce inconvenience to witnesses.

### 3. Ease of Access to Evidence

As noted above, Defendants assert, and Plaintiff does not contest, the witnesses to the events underlying the Complaint reside in the Central District of California. This factor, therefore, weighs in favor of transfer.

//
//
//

####    4.    Remaining Factors

As to the remaining factors generally considered by courts in exercising discretion to grant a motion to transfer, the Court finds those factors to be neutral or otherwise do not support venue in the Southern District of California.

## IV.    CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel (ECF No. 6).  Specifically, this Court **ORDERS** the parties to proceed to arbitration with Plaintiff's Counts III, IV, V, VI, and VII only.

Furthermore, this Court **GRANTS** Defendant's Motion to Transfer remaining Counts I and II and finds that the Central District of California is the proper venue (ECF No. 2).  Consequently, this Court **DENIES** Plaintiff's request to stay or, in the alternative, dismiss this action, without prejudice to Plaintiff's reraising the issue with the transferee court (*See* ECF No. 6).

**IT IS THEREFORE ORDERED** that the Clerk of this Court transfer this matter to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

**DATED: November 22, 2021**

Hon. Cynthia Bashant
United States District Judge